# In the United States Court of Federal Claims

No. 20-711
(Filed: October 21, 2025)

```
*****************************************
MLB TRANSPORTATION, INC.,              *
                                       *
                  Plaintiff,           *
                                       *
v.                                     *
                                       *
THE UNITED STATES,                     *
                                       *
                  Defendant.           *
*****************************************
```

*J. Larry Stine*, Wimberly, Lawson, Steckel Schneider & Stine, PC, Atlanta, GA, counsel for Plaintiff.

*James W. Poirier*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## <u>OPINION AND ORDER</u>

**DIETZ, Judge.**

      MLB Transportation, Inc. ("MLB"), a government contractor specializing in patient transportation services, seeks damages from the United States for breach of contract under the Contract Disputes Act, 41 U.S.C. §§ 7104 *et seq.* ("CDA"). MLB claims that the Department of Veterans Affairs ("VA") used inflated trip estimates in its procurement of transportation services, engaged in prohibited competition, made an out-of-scope change to the contract, and failed to reimburse its attorney's fees. Before the Court is the government's second motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). The government contends that it is entitled to judgment as a matter of law because the undisputed evidence shows that the VA awarded the contract to a separate entity, M.B. Transportation Company ("MB"). The government also asserts that the undisputed evidence shows that the contract is void *ab initio* because MB fraudulently induced the VA to enter into the contract by falsely stating that it was a Service-Disabled Veteran-Owned Small Business ("SDVOSB"). For the reasons set forth below, the Court **GRANTS** the government's second motion for summary judgment.

## I.    BACKGROUND

On February 21, 1991, Michael L. Baker incorporated MB in the state of Georgia. Def.'s Second Mot. Summ. J. [ECF 48-1] at 8; Pl.'s Resp. to Second Mot. Summ. J. [ECF 51-2] at 3.[1] Mr. Baker was the 100% owner of MB, and he is not a veteran. Def.'s First Mot. Summ. J. [ECF 20-1] at 603, 624; [ECF 48-1] at 1-2. In the early 2000s, Leon Gresham, Mr. Baker's brother-in-law and a service-disabled veteran of the United States Navy, began working for Mr. Baker. [ECF 20-1] at 590-91; Pl.'s Resp. to First Mot. Summ. J. [ECF 25] at 7-8. Mr. Gresham eventually became the fleet manager at MB. [ECF 20-1] at 593. In 2003, the VA awarded MB a contract for wheelchair patient transportation services. *Id.* at 10.

On January 4, 2006, MLB was incorporated in the state of Georgia. [ECF 48-1] at 36; [ECF 51-2] at 5. According to MLB, on July 1, 2007, Mr. Baker and Mr. Gresham executed a shareholder agreement, which granted Mr. Gresham 51% ownership and Mr. Baker 49% ownership of MLB. [ECF 51] at 13; [ECF 20-1] at 64, 87. Prior to 2009, MLB had no contracts with the VA or any other entity. [ECF 20-1] at 706; [ECF 48] at 13; [ECF 51-2] at 7. MLB and MB were separate companies. [ECF 51] at 13.

On March 27, 2009, the VA issued a solicitation seeking contractors to transport patients to and from the VA Medical Center Atlanta/Decatur by wheelchair-accessible vans and sedans. Compl. [ECF 1] ¶ 10; [ECF 20-1] at 107. Unlike the 2003 VA contract awarded to MB, the 2009 contract was set-aside for SDVOSBs. [ECF 20-1] at 107, 133. The solicitation called for a one-year contract with four option years. *Id.* at 112. MB was not eligible for contract award under the solicitation because it was not an SDVOSB. [ECF 51-2] at 7.

On April 25, 2009, Mr. Baker submitted a proposal on behalf of an entity identified as "MB Transportation, Inc. d/b/a MLB Transportation ('MB Transportation')." [ECF 20-1] at 181-83. The proposal contained the Tax Identification Number ("TIN") for MB. *Id.* at 177, 322. Also, the proposal stated that "MB Transportation is currently a minority-owned, service[] disabled veteran company." *Id.* at 194, 198. After conducting a business clearance review and responsibility determination, [ECF 48-1] at 119-21, on July 29, 2009, the VA awarded the contract, [ECF 20-1] at 210. It identified the contractor as:

> M B TRANSPORTATION COMPANY
> MLB TRANSPORTATION
>
> 1901 MONTREAL RD STE 121
> TUCKER GA 300845247

*Id.* The contract was signed by "Michael L. Baker CEO." *Id.* According to MLB, shortly thereafter, on August 15, 2009, Mr. Gresham signed a promissory note stating that "MLB Transportation, Inc. . . . promise[s] to pay . . . Michael Baker . . . the sum of . . . $983,000" for the transfer of assets from MB to MLB. [ECF 25-1] at 59-60 (capitalization omitted); [ECF 51] at 17. Performance of the contract began on October 1, 2009. [ECF 1] ¶ 33.

---

[1] All references to page numbers within documents filed with the Court electronically refer to the page numbers generated by the CM/ECF system.

On April 7, 2010, an attorney claiming to represent "MLB Transportation Company, Inc. d/b/a MB Transportation and Mr. Michael Baker, the owner of MLB" sent a letter to the VA's contracting officer requesting "confirmation and/or a status change in MLB's federal [TIN]." [ECF 20-1] at 322. The attorney stated that "the current contract for MLB should be operated under the official corporate name of 'MLB Transportation Company, Inc.' and have a federal [TIN] of [MLB's TIN]." *Id.* (emphasis omitted). In response, the contracting officer amended the contract to "incorporate[] the contractor's new . . . [TIN]." [ECF 51-1] at 89. Contrary to the initial 2009 contract award, the 2010 modification identified the contractor as "MLB Transportation, Inc." *Id.* This modification also exercised option year one under the contract. *Id.* Subsequent contract modifications to exercise later option years and to extend the life of the contract also listed "MLB Transportation, Inc." as the contractor. *Id.* at 55-57.

The contract was performed from October 2009 through March 2015. [ECF 20-1] at 377. On September 29, 2017, MLB submitted a request for equitable adjustment alleging, among other things, that the VA used negligent trip estimates, engaged in prohibited competition, made out-of-scope changes, and failed to reimburse its attorney's fees. [ECF 1] ¶ 4; [ECF 20-1] at 377. On September 10, 2019, after MLB amended its request, the contracting officer issued a final decision denying the requested relief. [ECF 1] ¶ 7; [ECF 20-1] at 583-85.

MLB filed its complaint in this Court on June 12, 2020, seeking compensation for the previously denied request. [ECF 1]. On June 9, 2022, the government filed a motion to dismiss the complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), or in the alternative, a motion for summary judgment pursuant to RCFC 56. [ECF 20]. The government argued that MLB falsely certified its status as an SDVOSB and, because of its false certification, no valid contract was formed. *Id.* at 22. The government also argued that it was entitled to summary judgment on MLB's claims for compensation based on trip volume estimates, prohibited competition by the VA, out-of-scope contract changes, and attorney's fees because there was insufficient evidence for MLB to prevail on these claims. *Id.* at 23.

On March 25, 2024, the Court denied the government's motion to dismiss for lack of subject-matter jurisdiction and granted its motion for summary judgment with respect to MLB's claims based upon trip volume estimates and prohibited competition. *MLB Transp., Inc. v. United States*, 170 Fed. Cl. 322, 338-39 (2024). The Court denied the government's motion for summary judgment with respect to MLB's SDVOSB status and MLB's claims for out-of-scope contract changes and attorney's fees. *Id.* Thereafter, the government filed a second motion to dismiss and motion for summary judgment, which became fully briefed on June 11, 2025. *See* [ECF 48]; [ECF 51]; Def.'s Reply [ECF 53]. In its reply, the government abandoned its motion to dismiss "[i]n the interest[] of judicial economy." [ECF 53] at 5. The Court held oral argument on September 23, 2025. Order [ECF 54].

## II.    STANDARD OF REVIEW

Under RCFC 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). An issue is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it might impact the outcome of the suit under the governing law. *Id.* at 248. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, which, if satisfied, shifts the burden to the non-moving party to show that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited and all justifiable inferences are to be drawn in the nonmovant's favor." *Bai v. Toy Island Mfg. Co.*, 243 F.3d 562, 562 (Fed. Cir. 2000). However, the Court does not "weigh the evidence or determine the truth of the matter but merely determine[s] whether there is a genuine issue for trial." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1339 (Fed. Cir. 2022) (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 249); *see also Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998) ("[C]ourts do not make findings of fact on summary judgment.").

To satisfy its burden, "[t]he moving party . . . must file with the Court the documentary evidence . . . that support its assertions that material facts are beyond genuine dispute unless it is basing its motion for summary judgment on the 'absence of evidence to support the nonmoving party's case.'" *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 743 (2005) (internal citation omitted) (quoting *Celotex Corp.,* 477 U.S. at 325). However, for the non-moving party to prevail by demonstrating that a genuine issue for trial exists, the non-moving party must "go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions." *Puerto Rico Dep't of Lab. & Hum. Res. v. United States*, 49 Fed. Cl. 24, 30 (2001) (citing *Celotex Corp.,* 477 U.S. at 324). "[M]ere denials, conclusory statements, or evidence not significantly probative will not defeat summary judgment." *Spectre Corp. v. United States*, 172 Fed. Cl. 159, 164 (2024) (citing *Celotex*, 477 U.S. at 322-24); *see also Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1244 (Fed. Cir. 2007) (stating that the non-moving party "cannot rest on mere allegations[] but must present actual evidence"); *Bannum, Inc. v. United States*, 151 Fed. Cl. 755, 762 (2021) ("While the non-moving party may defeat a motion for summary judgment with evidence, such as hearsay, that would not be admissible at trial, such evidence must be corroborated or reflect some indicia of reliability.").

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact," the court shall grant summary judgment to the moving party. *Holland v. United States*, 57 Fed. Cl. 540, 560 (2003) (quoting RCFC 56(c)). The court shall also grant summary judgment to the moving party if the non-moving party fails to present "proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial." *Vanquish Worldwide, LLC v. United States*, 140 Fed. Cl. 460, 475 (2018) (quoting *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994)). The Court should deny summary judgment if "there is sufficient evidence favoring the nonmoving party for a [trier of fact] to return a verdict for that party." *Anderson*, 477 U.S. at 249, 251-52 (stating that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and a grant of summary judgment is appropriate." *Bannum*, 151 Fed. Cl. at 762 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

4

## III.    DISCUSSION

The government contends that it "is entitled to summary judgment because MLB cannot demonstrate a genuine issue concerning whether the VA issued a contract to MLB." [ECF 48] at 28 (capitalization omitted). According to the government, MB and MLB are separate corporations, *id.* at 16, and MB—not MLB—was awarded the contract by the VA, *id.* at 14, 17. The government argues that MLB failed to present evidence sufficient to convince a reasonable factfinder that the VA accepted an offer from MLB. [ECF 53] at 16. Additionally, the government contends that it is entitled to summary judgment because MB "obtained the contract through fraud in the inducement" and, therefore, the contract is void *ab initio*. [ECF 48] at 28-29. As explained below, the Court finds that the undisputed evidence shows that the VA awarded the 2009 contract to MB and that the 2009 contract is void *ab initio*.

### A.    The VA Awarded the 2009 Contract to MB

"When contracting with the Federal Government, th[e] elements of contract formation are: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Zhengxing v. United States*, 71 Fed. Cl. 732, 738 (2006) (internal quotation marks omitted) (citing *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003); *Total Medical Mgmt, Inc. v. United States*, 104 F.3d 1314 (Fed. Cir. 1997)), *aff'd*, 204 F. App'x 855 (Fed. Cir. 2006). Accordingly, "[a]s a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent . . . [that demonstrates] the existence of an offer and a reciprocal acceptance." *Turping v. United States*, 913 F.3d 1060, 1065 (Fed. Cir. 2019) (quoting *Anderson*, 344 F.3d at 1353). "Offer means a response to a solicitation that, if accepted, would bind the offeror to perform the resultant contract." *Hanford Tank Disposition All., LLC v. United States*, 173 Fed. Cl. 269, 313 (2024) (quoting FAR 2.101). "[R]esponses to requests for proposals . . . are offers called 'proposals.'" *Id.* For acceptance, the government must "manifest assent to the same bargain proposed by the offer." *Anderson*, 344 F.3d at 1356 (quoting Restatement (Second) of Contracts § 50 cmt. a (A.L.I. 1981)); *see also Imaginarium, LLC v. United States*, 166 Fed. Cl. 234, 242 (2023) ("Evidence of the United States' intent to bind itself in contract may take several, nonexclusive forms," including "documentary evidence, such as written agreements.").

"[T]o determine which corporation . . . is the contractor entitled to institute action in this court, [the court] must look first to the language of the contract instrument." *Gen. Dynamics Corp. v. United States*, 47 Fed. Cl. 514, 525 (2000); *see also Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed. Cir. 1993) ("Contract interpretation begins with the plain language of the agreement."); *Linda Newman Constr. Co. v. United States*, 48 Fed. Cl. 231, 234 (2000) ("In construing a contract, the words are to be given 'their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.'" (quoting *Harris v. Dep't of Veteran Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998))). "When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions." *TEG-Paradigm Env't, Inc. v. United States*, 465 F.3d 1329 (Fed. Cir. 2006) (citing *Coast Fed. Bank, FSB v. United States,* 323 F.3d 1035, 1040 (Fed. Cir.

2003) (en banc); *McAbee Constr. Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). "If the contract language can be interpreted in two different and reasonable ways, however, then it is ambiguous and factors outside the contractual terms can be taken into account to aid the court in interpreting the instrument." *Gen. Dynamics Corp.*, 47 Fed. Cl. at 525; *see also Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996) ("If more than one meaning is reasonably consistent with the contract language, then the contract term is ambiguous.") (citing *C. Sanchez & Son Inc. v. United States*, 6 F.3d 1539, 1544 (Fed. Cir. 1993)). In the case of ambiguity, "the court can look at all the relevant circumstance surrounding the transaction to discover the parties' underlying intention, including the conduct of the parties before the advent of the controversy, oral statements, writings, and other conduct by which the parties manifested their assent." *Gen. Dynamics Corp.*, 47 Fed. Cl. at 525 (citing *KMS Fusion, Inc. v. United States*, 36 Fed. Cl. 68, 76-77 (1996)). "When faced with an ambiguous contract, we 'construe its language to effect the parties' intent at the time they executed the [contract].'" *Metro. Area Transit, Inc. v. Nicholson*, 463 F.3d 1256, 1260 (Fed. Cir. 2006) (alteration in original) (quoting *Dureiko v. United States*, 209 F.3d 1345, 1356-57 (Fed. Cir. 2000)).

Contract interpretation is a question of law and therefore appropriately resolved on summary judgment. *Allen v. United States*, 119 Fed. Cl. 461, 478 (2015); *SSA Marine, Inc. v. United States*, 77 Fed. Cl. 662, 665 (2007). "Nevertheless, interpretation of contract language may involve mixed questions of material fact and law, and thus not present a simple, pure question of law." *Enron Fed. Sols., Inc. v. United States*, 80 Fed. Cl. 382, 391-92 (2008) (citing *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed. Cir. 1988)). "To the extent that contract terms are ambiguous, requiring *weighing* of external evidence, the matter is not amendable to summary resolution." *Beta Sys., Inc.*, 838 F.2d at 1183 (emphasis added) (citing Samuel Williston, *A Treatise on the Law of Contracts* § 616, at 649, 652 (3d ed. 1961)). However, if there are no material facts genuinely in dispute, the Court may resolve a dispute over contract language on summary judgment. *See Tecom, Inc.*, 66 Fed. Cl. at 743 ("A contract's terms may, however, be ambiguous, necessitating a review of extrinsic evidence to determine the parties' intent" and that, "[u]nder such circumstances, *if material facts are genuinely in dispute*, summary judgment may not be granted.") (emphasis added); *see also Mata v. United States*, 114 Fed. Cl. 736, 746 (2014); Richard A. Lord, *Williston on Contracts* § 30:7 (4th ed. May 2025 Update) ("[I]f a contract is ambiguous, its interpretation is a question of law for the court as long as the extrinsic evidence bearing on the interpretation is undisputed.").

      1.     *The Government has Shown that there is No Genuine Issue of Material Fact that the Contractor/Offeror is MB*

The 2009 contract identifies the government in block 9 as the "Department of Veterans Affairs" and the contractor/offeror in block 17a as follows:

      M B TRANSPORTATION COMPANY
      MLB TRANSPORTATION

      1901 MONTREAL RD STE 121
      TUCKER GA 300845247

[ECF 20-1] at 210. Because MB and MLB are distinct corporate entities, *see* [ECF 48-1] at 8 (State of Georgia Business Search for MB), 36 (State of Georgia Business Search for MLB), and are both listed in the contract as the contractor/offeror, the contract may reasonably be interpreted as identifying either MB or MLB as the contractor/offeror. Therefore, the contract is ambiguous with respect to the identity of the contractor/offeror. *See Grumman Data Sys. Corp.*, 88 F.3d at 997 ("If more than one meaning is reasonably consistent with the contract language, then the contract term is ambiguous.") (citing *C. Sanchez & Son Inc. v. United States*, 6 F.3d 1539, 1544 (Fed. Cir. 1993)). Consequently, the Court examines the relevant documentary evidence surrounding the contract formation—namely the proposal and the evaluation and award decision documents—to determine whether the contractor/offeror is MB or MLB. As shown below, the undisputed evidence shows that the contractor/offeror under the 2009 contract was MB, not MLB.

The proposal submitted to the VA on April 25, 2009, identified the offeror as "MB Transportation, Inc. d/b/a MLB Transportation." [ECF 20-1] at 181. Thus, the proposal identified "MB Transportation, Inc." as the offeror, and "MLB Transportation" as the name under which MB conducts business. *See D/B/A.*, Black's Law Dictionary (12th ed. 2024) ("Doing business as. The abbreviation [d/b/a] usu[ally] precedes a person's or business's assumed name . . . . It signals that the business may be licensed or incorporated under a different name."); *see also Alias*, Black's Law Dictionary (12th ed. 2024) ("corporate alias[:] An assumed or fictitious name adopted by a corporation, esp[ecially] for conducting business. See D/B/A."). The proposal also listed MB's TIN, [ECF 20-1] at 177, and consistently used letterhead listing MB as the entity name and MLB as the d/b/a name, *id.* at 103, 180-81 (letterhead stating "MB Transportation dba MLB Transportation Company;" *id.* at 185 (letterhead stating "M.B. Transportation Company, Inc. also doing business as MLB Transportation Company"). Also, the proposal was signed by Mr. Baker, and it stated that "Michael Baker, President/CEO[,] is the only person authorized to sign contracts and paper work on behalf of M B Transportation." *Id.* at 183. Mr. Baker is the 100% owner of MB, *id.* at 624, and, according to MLB, only a 49% owner of MLB, *id.* at 87.

The proposal represented that the offeror "has managed as many as three (3) contracts at one time in three different cities with a daily ridership over 300 passengers," that the offeror "has been providing non-emergency services for government contracts since 1989," and that the offeror "has over 20 years of experience exclusively in non-emergency transportation to passengers attending training and medical related services." [ECF 20-1] at 181, 183 (emphasis omitted). MLB was incorporated in 2006, [ECF 51-2] at 5, and had no contracts prior to the alleged contract at issue in this litigation, [ECF 20-1] at 706. The proposal also stated that the offeror "look[s] forward to a *continued*, successful relationship with the Atlanta V.A. Medical Center and the [VA]." *Id.* at 183 (emphasis added). MB was the incumbent contractor, not MLB. *See id.* at 10.

The proposal further stated that "Mr. William Burrell, General Manager, handles the day-to-day operation and is responsible for total contract compliance, and Mr. Leon Gresham, Fleet Manager, has the responsibility of maintaining the fleet of vehicles." [ECF 20-1] at 183. It is undisputed that Mr. Burrell was MB's General Manager and that he was performing this role for MB at the time of proposal submission. [ECF 48-1] at 11-12; [ECF 51-2] at 3-4. It is also undisputed that Mr. Gresham went to work for MB after he was given a position by Mr. Baker in

connection with MB's 2003 VA contract. [ECF 20-1] at 590-91, 593. The proposal also identified other personnel who were employed by MB, *id.* at 203-04, such as Ms. Kimberly Williams, who was employed as "the Quality Control Technician," and who had, at that time, "been with MB Transportation for over 10 years." *Id.* at 186. There is no evidence in the record that MLB employed any personnel at the time the proposal was submitted; thus, the proposal referenced MB personnel.

Regarding the offeror responsibility evaluation and award decision, the VA obtained a Dun & Bradstreet Supplier Qualifier Report on "M B Transportation Company." [ECF 48-1] at 136. The report included MB's DUNS number,[2] and MB's date of incorporation, February 21, 1991. [ECF 48-1] at 136, 138. There is no evidence in the record that the VA obtained a Supplier Qualifier Report on MLB prior to contract award. Furthermore, when reviewing contractor past performance information and searching the excluded party list, the VA only searched for MB's DUNS number. *Id.* at 123-24, 144-45. Also, in a pre-award business clearance review memorandum, the VA indicated that it reviewed "the proposed award to MB Transportation dba MLB Transportation." *Id.* at 119. It further stated in an internal "Notification of Award" memorandum that the contract awardee is "MB [T]ransportation dba MLB Transportation." *Id.* at 118. Aside from this evidence showing the VA's recognition of MLB as the d/b/a name for MB, there is no probative evidence showing that the VA intended to contract with MLB.

Accordingly, in light of the extrinsic evidence, the Court finds that the government has met its burden of showing that there is no genuine issue of material fact regarding the identity of the contractor/offeror in the 2009 contract. The undisputed evidence shows that the contractor/offeror identified in block 17a of the contract is MB, not MLB. The burden now shifts to MLB to show that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 325.

> 2. *MLB has Not Shown that a Genuine Issue of Material Fact Exists Regarding the Identity of the Contractor/Offeror*

In its response to the government's motion, MLB asserts that whether MLB had a contract with the VA "is a hotly disputed issue of material fact." [ECF 51] at 22. MLB relies on a certificate of insurance, a letter from a bank, and a letter from a lender—each of which was submitted with the proposal and referenced "MLB Transportation, Inc."—to demonstrate that the VA was aware of MLB's existence as a separate entity prior to contract formation. *Id.* at 22-23. MLB also relies on "amendments to the [s]olicitation . . . [which were] submitted as MLB Transportation Company with no reference to MB Transportation." *Id.* at 23. Aside from these pre-award documents, MLB contends that "[t]he subsequent actions of the [VA after contract award] reflect an understanding that the contractor was MLB." *Id.* MLB explains that "[t]he VA ran a Dun and Bradstreet search on . . . MLB Transportation, Inc." and that "[t]he annual exercise of the opt-in periods for the contract showed the contractor as MLB Transportation, Inc." *Id.* According to MLB, "[t]hese material facts demonstrate that MLB Transportation, Inc. was the contractor and at a minimum, show[] disputed material facts as to the issue of who was

---

[2] A "DUNS number" refers to the "Data Universal Numbering System" number—a "9-digit number assigned by Dun and Bradstreet, Inc. (D&B), to identify unique business entities, which [was] used as the identification number for Federal contractors." FAR 2.101 (2009). MB and MLB have different DUNS numbers. *Compare* [ECF 20-1] at 10 (MB's DUNS number) *with* [ECF 51-1] at 89 (MLB's DUNS number).

the contractor." *Id.*

The Court finds that MLB has not presented sufficient evidence to show that a reasonable trier of fact could conclude that MLB was the offeror/contractor under the 2009 contract. It is undisputed that the proposal included a certificate of insurance, a bank letter, and a lender letter that each refer to "MLB Transportation, Inc." [ECF 51-1] at 86-88. It is also undisputed that the VA's pre-award solicitation amendments, VetBiz searches, proposal evaluation consensus agreement, and negotiation memorandum each reference "MLB Transportation Company." *Id.* at 35, 38, 76-78, 80-85. Nevertheless, the proposal submitted to the VA identified the contractor/offeror as "MB Transportation, Inc. *d/b/a MLB Transportation*." [ECF 20-1] at 181 (emphasis added). Thus, any reference to "MLB Transportation" in the pre-award documents— while useful for making a colorable argument—does not create a genuine issue regarding the identity of the contractor/offeror. *See C.W. Over & Sons, Inc. v. United States*, 54 Fed. Cl. 514, 520 (2002) ("To create a genuine issue of fact, the party opposing summary judgment must do more than present some evidence on an issue it asserts is disputed: ' . . . [i]f the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted.'") (quoting *Anderson*, 477 U.S. at 249-50). A reasonable fact finder could not conclude, based on these documents, that the VA intended to contract with MLB as a separate entity or that the VA understood the references to "MLB Transportation" to be anything other than a reference to MB's d/b/a name. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]."). Indeed, the only documents that explicitly reference MLB by its registered corporate name, "MLB Transportation, Inc.," are the certificate of insurance, bank letter, and lender letter—all of which were generated by the contractor/offeror and submitted to the VA as part of the proposal package. *See* [ECF 51-1] at 86-88. As such, these documents are not probative on the issue of whether the VA intended to contract with MLB in 2009. *See Alliant Techsystems Inc. v. United States*, 74 Fed. Cl. 566, 576 (2007) ("In interpreting a contract, the Court attempts to 'accomplish the intention of the parties.'") (quoting *In re Binghamton Bridge,* 70 U.S. 51, 74 (1865)).

MLB also references certain documents dated after the 2009 contract award. [ECF 51] at 16. Most notably, MLB relies on the August 30, 2010, contract modification that exercised option year one. *Id.* The modification listed the contractor's name as "MLB Transportation, Inc." and incorporated MLB's TIN and DUNS numbers into the contract. [ECF 51-1] at 89. Subsequent modifications issued by the VA to exercise the remaining option years also referenced "MLB Transportation, Inc." *Id.* at 55-57. According to MLB, these modifications show that the VA understood the contractor to be MLB. [ECF 51] at 16. However, these modifications do not demonstrate that, at the time of contract formation, the VA was aware that MLB existed as a separate entity and that the VA intended to contract with MLB. Rather, these modifications support the conclusion that the VA initially awarded the contract to MB and only modified the contract to reflect information pertaining to MLB nearly a year after contract formation.[3]

---

[3] MLB's other post-award evidence does not establish a genuine issue of material fact regarding the identity of the contractor/offeror. For example, MLB contends that a December 11, 2009, Business Associate Agreement with the VA demonstrates the VA's understanding that the contractor was MLB because the agreement specifies "MLB Transportation Company," [ECF 51-1] at 47-53, and "do[es] not reference MB," [ECF 51] at 14-15. MLB makes a

Because MLB has not satisfied its burden of showing a genuine issue of material fact regarding the identity of the contractor/offeror, the government is entitled to judgment as a matter of law that the contractor/offeror in the 2009 contract is MB. *See Bannum*, 151 Fed. Cl. at 762 ("If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and a grant of summary judgment is appropriate.") (quoting *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted)). The existence of a valid contract with the government is an essential element to a breach of contract claim. *See San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). Thus, because the undisputed evidence shows that the VA contracted with MB, not MLB, the government is entitled to summary judgment on MLB's breach of contract claims. *See Vanquish Worldwide, LLC*, 140 Fed. Cl. at 475 (stating that the court should grant summary judgment to the moving party if the non-moving party fails to present "proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial") (quoting *Dairyland Power Co-op.*, 16 F.3d at 1202).[4] [5]

## B.    The 2009 Contract Is Void *Ab Initio*

The government also argues that it is entitled to summary judgment on its affirmative defense of fraud in the inducement because "*the actual contractor*, [MB], obtained the contract through fraud in the inducement." [ECF 48] at 29 (emphasis in original). The government contends that "[i]n its proposal, [MB] falsely stated that [it] was a SDVOSB," and that it is undisputed that this is a false statement. *Id.* The government further contends that "[o]fficial

---

similar assertion based on a December 29, 2009, contract modification issued by the VA that references "MLB Transportation Company." [ECF 51] at 15; [ECF 51-1] at 24. Additionally, during oral argument, MLB directed the Court to the minutes from an October 15, 2009, site inspection conducted by a VA contracting officer's technical representative ("COTR"), which reference "MLB Transportation LLC." [ECF 51-1] at 44-46. However, as discussed above, the references to "MLB Transportation" merely demonstrate the VA's awareness of MB's d/b/a name, rather than its intent to contract with MLB.

[4] Where there is an ambiguity in a contract, the Court must follow "[t]he general rule [of] *contra proferentem,* which requires ambiguities in a document to be resolved against the drafter." *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004). However, "[t]he patent ambiguity doctrine . . . requires construing ambiguities against the contractor where the ambiguities are so patent and glaring that it is unreasonable for a contractor not to discover and inquire about them." *HPI/GSA 3C, LLC*, 364 F.3d at 1334 (internal quotation marks omitted) (quoting *Triax Pac., Inc. v. West*, 130 F.3d 1469, 1474-75 (Fed. Cir. 1997)). "Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent," *HPI/GSA 3C, LLC*, 364 F.3d at 1334, and "the normal rule of *contra proferentem* applies *if the contractor's interpretation is reasonable*," *LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1317 (Fed. Cir. 2009) (second emphasis added). Here, although the parties do not brief the issue of whether the ambiguity regarding the identity of the contractor/offeror is patent or latent, the outcome is the same. If the ambiguity were patent, the Court would construe the ambiguity against MLB to find that the contractor/offeror is MB. If the ambiguity were latent, the Court would find that MLB's interpretation—that the contract was awarded to MLB—is not reasonable because it is refuted by the undisputed evidence. Thus, in either instance, the Court would interpret the contract to indicate that the contractor/offeror is MB.

[5] MLB does not argue that the VA created an implied-in-fact contract with MLB. *See Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) ("Plaintiff has the burden to prove the existence of an implied-in-fact contract."). Therefore, the Court does not address this issue. *See Ahtna Logistics, LLC v. United States*, 163 Fed. Cl. 488, 505 (stating that "the Court will not construct [the plaintiff's] arguments for it" despite the existence of facts that could support an assertion).

records establish that the contracting officer relied upon the false statement when awarding the contract." *Id.*

"[T]o prove that a government contract is 'tainted from its inception by fraud' and is thus 'void ab initio,' the government must prove that the contractor (a) obtained the contract by (b) knowingly (c) making a false statement." *Long Island Savings Bank, FSB*, 503 F.3d at 1246; *accord Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1371 (Fed. Cir. 2013) (stating that the general inquiry for determining whether a contract is void *ab initio* is "whether [] illegal conduct tainted the contract," and noting that "[d]etermining whether illegality taints a contract involves questions of fact") (quoting *Godley v. United States*, 5 F.3d 1473, 1476 (Fed. Cir. 1993)), *opinion corrected on denial of reh'g*, 563 F. App'x 769 (Fed. Cir. 2014). Where a contractor "obtained [a] contract by knowingly falsely stating that it was a small business . . . [the] government contract [is] tainted from its inception by fraud [and] is void *ab initio*." *J.E.T.S., Inc. v. United States*, 838 F.2d 1196, 1200 (Fed. Cir. 1988). The general rule that "a Government contract tainted by fraud or wrong-doing is void *ab initio* . . . protects the integrity of the federal contracting process and safeguards the public from undetectable threats to the public fisc." *Godley*, 5 F.3d at 1475 (citing *J.E.T.S., Inc.*, 838 F.2d at 1200; *United States v. Miss. Valley Generating Co.*, 364 U.S. 520, 565 (1961)). A contract found to be void *ab initio* has "no legal effect," and is "[n]ull from the beginning, as from the first moment when a contract is entered into." *Void*, Black's Law Dictionary (12th ed. 2024).

Here, the Court finds that the undisputed evidence shows that MB obtained the 2009 contract by knowingly making a false statement regarding its status as an SDVOSB. The solicitation issued by the VA for the 2009 contract stated that "[t]his is a Service Disabled Veteran Owned Small Business set-aside requirement." [ECF 20-1] at 133; *see* [ECF 48-1] at 119. In response to the solicitation, MB submitted a proposal stating that "MB Transportation is currently a minority-owned, service[] disabled veteran company and is presently fulfilling the needs to become a SBA Service Disabled Business Enterprise." [ECF 20-1] at 194. It further stated that "MB Transportation is a minority owned, service disable[d] veteran company." *Id.* at 198. These are false statements that MB knowingly made. It is undisputed that Mr. Baker, the 100% owner of MB, submitted the proposal, *id.* at 183, 624, and it is undisputed that Mr. Baker is not a veteran, *see* [ECF 48-1] at 1-2 (Mr. Baker's resume does not show any military service); *see also* [ECF 51-2] at 11 ("MB was unable to qualify as a SDVOSB as required in the 2009 contract"). Furthermore, the undisputed evidence shows that the VA relied upon these false statements when it awarded the contract to MB. The internal "Notification of Award" memorandum specified MB as the contractor and identified its business size as SDVOSB. [ECF 48-1] at 118. Additionally, the pre-award business clearance review memorandum shows that the VA opted to not evaluate a proposal submitted by another offeror that was not a SDVOSB. *Id.* at 119-20. Thus, the government has met its burden to show that MB obtained the 2009 contract through fraud in the inducement. *See LW Constr. of Charleston, LLC v. United States*, 139 Fed. Cl. 254, 291 (2018) (finding that "but for [the contractor's] representation that it was an SDVOSB, the VA would not have considered [the contractor's] proposal for award" where the solicitation specified that the "procurement is a [SDVOSB] set-aside," and that "[o]ffers received from concerns that are not [SDVOSB] concerns shall not be considered"); *J.E.T.S., Inc*, 838 F.2d at 1200-01 (affirming a Board decision that a contractor "obtained [a] contract by knowingly falsely stating that it was a small business" and noting that had the contractor "stated the truth

about its size, it would not have received the contract"). Therefore, the government is entitled to judgment as a matter of law that the 2009 contract is void *ab initio*. *See Godley*, 5 F.3d at 1475 ("[A] Government contract tainted by fraud or wrong-doing is void *ab initio*.").

MLB insists that "[a]t no place or time did MB represent that it was a SDVOSB" and that "MB was in the process of becoming an SBA Service Disabled Business Enterprise." [ECF 51-2] at 9. However, this argument is contradicted by the undisputed evidence. The proposal submitted by MB clearly states that it is "*currently* a . . . service disabled veteran company.*" [ECF 20-1] at 194 (emphasis added). While the proposal also states that MB "is presently fulfilling the needs to become a SBA Service Disabled Business Enterprise," *id.*, this statement is also contradicted by the evidence because MLB concedes that MB "was unable to qualify as a SDVOSB as required in the 2009 contract," [ECF 51-2] at 11. *See Bannum, Inc.*, 151 Fed. Cl. at 762 ("While the non-moving party may defeat a motion for summary judgment with evidence . . . that would not be admissible at trial, such evidence must be corroborated or reflect some indicia of reliability."). MLB does not present sufficient evidence to show a genuine issue of material fact regarding MB's knowing misrepresentation of its SDVOSB status to obtain the 2009 contract. *See Spectre Corp.*, 172 Fed. Cl. at 164 ("[M]ere denials, conclusory statements, or evidence not significantly probative will not defeat summary judgment.") (citing *Celotex*, 477 U.S. at 322-24).

In response to the government's motion for summary judgment, MLB contends that, if the Court determines that the 2009 contract was with MB, the Court should find that MLB is a successor-in-interest to MB's rights under the 2009 contract.[6] [ECF 51] at 27-29. Specifically, MLB argues that MB "transferred all of its assets to MLB," *id.* at 27 (capitalization omitted), thereby rendering "MLB . . . the successor to MB, by operation of law," *id.* at 28; *see* [ECF 51-2] at 12 ("[MLB] has argued that MLB [] received assets from MB [] and continue[s] as a successor with a change of ownership."). MLB also contends that "[t]he VA had no issue with MLB [] taking over the contract," and that "the VA acknowledged that MLB [] was the same entity with a change in ownership." [ECF 51] at 28. However, because the Court finds that the 2009 contract is void *ab initio*, MLB's successor-in-interest argument fails. Because the contract is void, there are no enforceable contract rights to which MLB may succeed MB. *See Jasmine Int'l Trading & Servs., Co. W.L.L. v. United States*, 120 Fed. Cl. 577, 583 (2015) (stating that a contract void *ab initio* contains "the type of severe legal infirmity that would preclude the parties' exchange of promises from giving rise to an enforceable agreement"); *see also Void*, Black's Law Dictionary (12th ed. 2024) (a contract found to be void *ab initio* has "no legal effect" and is "[n]ull from the beginning"); *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986) ("No damages can be awarded for 'breach' of a nullity") (citing *Schoenbrod v. United States*, 410 F.2d 400 (Ct. Cl. 1969)).

---

[6] MLB does not raise this claim—namely, that the 2009 contract was entered with MB and that MLB was a successor-in-interest to MB's contract rights—in its complaint. Presumably, MLB does not raise this claim because the solicitation was set-aside for an SDVOSB, [ECF 20-1] at 107, 133, and MLB concedes that MB was not able to qualify as an SDVOSB, [ECF 51-2] at 11. Because MLB raises this claim for the first time in response to the government's motion for summary judgment, the Court could treat this claim as waived. *See Kalick v. United States*, 109 Fed. Cl. 551, 561 n.10 (finding plaintiff's claims waived because they were raised for the first time in response to the government's motion to dismiss). Nevertheless, the Court addresses it in the interest of judicial economy.

## IV.    CONCLUSION

In sum, because the undisputed evidence shows that the 2009 contract was with MB, not MLB, the government is entitled to summary judgment on MLB's breach of contract claims. Furthermore, because the undisputed evidence shows that MB obtained the contract through fraud in the inducement, the contract is void *ab initio*, and MLB cannot sustain its claims as a successor-in-interest to MB's contract rights. Accordingly, the Court **GRANTS** the government's motion for summary judgment and **DISMISSES** the case.[7] The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge

---

[7] The Court considered *sua sponte* whether to join MB as a party and determined that such joinder was not necessary. Under RCFC 19(a)(1), "a person . . . must be joined as a party if . . . (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action." As an initial matter, MB does not claim an interest relating to the matter before the Court. Therefore, RCFC 19(a)(1)(B) is inapplicable. *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324-25 (holding that an absent party must claim it is necessary under RCFC 19(a)(1)(B) and show that its interest is direct and immediate). With regards to complete relief under RCFC 19(a)(1)(A), "[t]he term complete relief refers only to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *J.G.B. Enters., Inc. v. United States*, 57 Fed. Cl. 415, 417 (2003) (internal quotation marks omitted) (quoting *Arkwright–Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 209 (2d Cir. 1985)). This standard "protects existing parties by requiring the presence of all persons who have an interest in the litigation, so that any relief awarded will effectively and complete[ly] resolve the dispute." *Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 211 (2011) (citing Fed. R. Civ. P. 19 advisory committee's notes (1966)). Here, MB is not a party to the instant litigation. However, Mr. Baker is the 100% owner of MB, [ECF 20-1] at 603, 624, and Mr. Baker provided deposition testimony regarding MB in connection with the issues before the Court, *see* [ECF 20-1] at 612-646. Based on this testimony and the undisputed documentary evidence, the Court can conclude that the contract was entered with MB, that MB is not a SDVOSB, and that Mr. Baker submitted a proposal to the VA on behalf of MB that falsely represented MB as a SDVOSB. Thus, even to the extent that the issues relate to MB, the Court can effectively resolve them without joining MB as a party and provide complete relief among MLB and the government.